I'm not saying you're appearing in front of me a lot, Mr. Carpenter, but I liked your tie better yesterday. Good morning, I'm Paul Storm here on behalf of OrthoAccel. We are appealing the decision by Judge Seaborg to deny OrthoAccel's motion for preliminary injunction on the basis that OrthoAccel had not established a likelihood of success on the merits with respect to validity. On page 9 of the blue brief, you say that one of the issues in the case is whether Propel's expert impermissibly premised his testimony on only a portion of the relevant record and on false statements. Yes. What record evidence supports the statement that he based his testimony on false statements? That is on Appendix 1376. This is the second declaration. I'll let you get to it, but give a little context. This is the second declaration by Dr. Yadov. It's in response. I meant lines 1 through 6 I have underlined. It actually starts on 1375. At the bottom of 1375, Dr. Yadov says, as an initial matter, the priority documents do not disclose the combination of 20 minutes and 40 hertz, the first premise of Dr. Brunsky's analysis. That statement is false. I will point you to the basis. If you go to Appendix 590. Appendix 590 is a portion of the provisional application, which is the earliest document in the chain of priority. There is a full paragraph in the middle of the page. The paragraph describes a device to apply cyclical forces. It concludes with, the present invention embodied as the device described here repeats this cycle at a frequency of up to about 40 hertz. The next paragraph says, upon completion of one 20 minute duration of activation, the device automatically shuts off. Clearly referring to the device in the previous paragraph indicated to operate at up to about 40 hertz. When Dr. Yadov says the priority documents do not disclose the combination of 20 minutes and 40 hertz, that statement is false. Continuing on Appendix 1370. My recollection is that in fact there is something that says 1 to 20 minutes. Is that incorrect? The claim element at issue is 1 to 20 minutes daily. Yes. These two sentences don't say 1 to 20 minutes daily. That is part of the issue in this appeal. These two statements say that there is an example at 20 minutes operating at 40 hertz. Dr. Yadov said there is no example 20 minutes at 40 hertz. He is not correctly and in fact is falsely describing the priority documents, which goes to the question of whether Propel ever raised a substantial question of validity. The court's opinion does not cite to Dr. Yadov or in any way articulate that they did raise a substantial question of validity. At that point the presumption of validity would prevail. You make some statements. What is the case which says you need an expert? The other side would need an expert here. I think I said they need evidence. Is there a case that you can cite me that they need an expert? I don't think they have to have an expert. They have to have evidence outside the public record. Tell us why. What if we can decide the case based on reading the claims and the specification and the intrinsic record? Do you still need extrinsic evidence? I don't believe that you can decide the case based on just the intrinsic record, except in that narrow situation where you conclude that the claim element is totally absent from the specification. That's because two things. The presumption of validity starts with the patent when it issues is presumed valid. What is your statement that you need extrinsic evidence in order to deal with the written description question in the context of a preliminary injunction? Because the challenge, first off, it's clear. I would cite the Titan Tires again. Titan Tires specifically says that unless there's a challenge, the presumption of validity is adequate. If they don't challenge it, it's a valid patent. How does that take us to the fact that they have to put on extrinsic evidence? Because the presumption of validity flows from the intrinsic record. When the patent issues, we all know what the intrinsic record is. It's the claims, the specification, and the prosecution history, the priority leading up to those claims. That intrinsic record gets to the presumption of validity. That's where the presumption of validity comes from. It's sufficient unless challenged, and the challenge has to be clear and convincing evidence. We all know that. There has to be evidence other than the intrinsic record to raise that challenge. Like I said, there was a couple of cases that were cited that we pointed out, unless there's a claim element that is totally absent, and that's not this case at all. Your expert is Dr. Brunsky? Brunsky, yes. He's not a person of skill in the art, correct? He is a person of skill in the art. Not by his definition. Well, if you look at his credentials, and I'll point you to— No, that's not what I'm asking. Yeah. Not by his definition, is he? He is not an orthodontist. You're right. So he's not a person of skill in the art. I believe that he is a person of skill in the art, but not by his definition, and that's because of his background and training. So what you've answered me is, he's not a person of skill in the art by his definition. That's correct. Okay. But we didn't need to get to Dr. Brunsky's testimony unless, essentially, a substantial question was raised. If you look at the court's opinion, the court does not cite to any of the evidence that Propelled brought forward. In fact, I would point the court's attention to the opinion because he doesn't give any credence to the presumption of validity. On appendix page 25, which is where he really—the court begins talking about the question in detail. For example, at the bottom of page—appendix 25, the court says, various references to the possibility of using time periods somewhat longer or shorter than 20 minutes carry no hint that time periods as short as a minute or two might suffice. Well, kind of mixing up two different things. This case is a little bit unusual only because the validity issue is tied to the priority question. So they come in and they say, there's prior art that anticipates. They've made a case of invalidity, which you don't even dispute. The only question is, you come back and you say, well, no, no, no, no, that prior art doesn't invalidate because we've got a priority date. That's this case. That's close, but I believe that they have to carry the burden on the written description in order to meet that prior art. So we don't stipulate the priority documents fail the written description. Therefore, we are not stipulating that they are prior art that invalidates these claims. They have the burden to show that there's a failure of written description in order to get into the challenge. So they have to show that there's no written description in the priority documents. So we don't dispute the dates and the filing dates and the other parts. But we obviously vigorously disputed the written description requirement. And you're right, I was somewhat pointing to another mistake that the court made. At the bottom of page 25, appendix page 25, where the court says there's no hint of these other times, he then cites to Purdue Pharma, a case I'm sure you're familiar with, that if you disclose a forest, you need something to point to the tree. That is a challenge to this written description not raised by Propel. If you read Dr. Yadov's testimony, he is very clear that in his view, the written description discloses about 20 minutes daily and nothing else. He disregards, so other points to your original question, he disregards the portion that says or longer or shorter or other frequency. That's repeated several times. He disregards the different frequencies. So your view is if you have an expert and he only deals with one aspect, one phrase in the written description, the district court judge can't read the other phrases in there and deal with them too or consider them? I don't understand the point you're making. I think this issue about Dr. Brunsky goes straight to that question because the district court is not a person of ordinary skill. He's much farther afield from a person of ordinary skill than Dr. Brunsky. Let me cut to what I think is the chase. Sure. How does about 20 minutes, which is in the application of provisional application, support the range 1 to 20 minutes in claim 10? It does not. The two words or three words, about 20 minutes, taken in isolation, do not support 1 to 20 minutes. We haven't argued that they do. What we've argued is basically two-step analysis, if you will, that that is not remotely the limit of this disclosure. That this disclosure, when you read the entire disclosure, both patents, that is the provisional application and utility application together, it is very clear that the inventor had a broad view of what they were up to. There's numerous broad statements about what it is they were trying to do. There's a statement about the fact that they were trying to do something that is shorter than what has been done before. There's specific statements that it's about 20 minutes or longer or shorter or other frequency, meaning it doesn't even have to be every day. They're clearly disclosing that they have a broader view than about 20 minutes. So step one of this inquiry is the disclosure as a whole clearly shows that the inventor was not limiting themselves to about 20 minutes. And that's part of the challenge in Dr. Yadov. He just ignored all of that. Well, you're just saying that under Purdue Pharma, whatever, if the inventor thinks he wants to get the whole forest, that somehow is sufficient. His intent is to get the whole forest because he has vague references to all of this. That doesn't do it under our case law, does it? It does not. That's why I said it's a two-step analysis. This is step one. Step one is we're talking about what are the edges of the forest, not the 20-minute tree that Dr. Yadov sees. So the court only had the presumption of validity. So what's step two? Step two is Dr. Brunsky's analysis that works through the entire disclosure that shows that in the provisional application, there is an exact sample that shows 40 hertz and 20 minutes. We just pointed to that directly. Then in the utility application, the inventors disclose the use of .1 to 400 hertz. They disclose it three different times. One of them is at 20 minutes. The other two times is not limited to any particular duration. And Dr. Brunsky explains that when you look at the range of frequencies and the fact that it's a broad disclosure, what duration would you expect to come from those use of frequencies? And he explains how he gets to one minute from that. So he uses his skill in the bone reformation area to explain how the specific frequency ranges, examples, and broad disclosure taken together. What's the impact of concession that he's not a person of skill in the art? Then you would have to look at his disclosure and decide for yourself whether that evident. If you conclude that you have to get there, that the presumptive village is not good enough, that a substantial question has been raised, then you have to look at the disclosure, his testimony itself, to determine what the credibility to provide it. I think even though he's not an orthodontist, his testimony is quite useful as to how a person of ordinary skill would read these documents, even though he himself is not a person of ordinary skill by his definition. You're into your rebuttals, so I'll get to the other side. May it please the Court, and good morning, Your Honors. Christopher Schultz for the Appellee Propel. Tell us about Dr. Brunsky. It's conceded he's not a person of skill in the art. Is he an expert in the field? No, he's not, and that's an argument we made to the district court and to Your Honors in this field. Why not? Because he defines... He's not a posita. Everybody agrees he's not a person of skill in the art. But does he have general expertise? I mean, he's got a lot of stuff on his CV. He's a metallurgist, so I would say no. He has experience in dental implants, I believe, and the metallurgist background probably plays into that, what materials you use. But in terms of having... We're talking about braces, we're talking about aligners, we're talking about orthodontic treatment. In terms of skill in that area, I didn't see any of that, and that's why we made the point. So they say you need expert testimony, which, to Your Honors' point, I'm not sure there is a case that says that. But if they're right about that, they have no expert, and I think you just heard counsel admit that. But the most compelling evidence in this case, and Ariad says you need to look within the four corners of the document, of the priority documents. The inventor in the provisional application said use 0 to 40 hertz with about 20. When he filed the parent application, he apparently came to the realization that a broader range of frequencies was appropriate. He went from 0 to 40 to .1 to 400, times tenfold. Tellingly, what did he do with respect to duration? He again said about 20. He demonstrated to one skilled in the hour, reading these documents. Your learned opponent says all through there, it says shorter periods. It does not say shorter. It says shorter or longer, and it says any suitable duration. That's all it says, isn't it? That's no better than the boilerplate in the D3 Enterprise cases that their expert also relies on, which is the paragraph that's cut and pasted into virtually every patent application that we read and every issued patent. It provides no guidance to one skilled in the hour to 1 to 20 minutes. I don't want to make a big deal of this, but footnote 5 of your brief is quite unusual. The Genentech case, Your Honor? Yeah, and that you're asking us. I mean, there's nothing before us. There's no motion to resolve. I don't even understand how we would do that. We would say this patent is invalid, and how did they have notice of that and the opportunity to argue that? It's a different issue, as we recognize here. Most of this stuff, rightly or wrongly, has been on what burdens exist in the preliminary injunction stage. So I don't understand what you're asking for or how we could do that. In the Genentech case, the authority of this court is cited. Judge Lurie reversed a preliminary injunction order and invalidated the patent sua sponte because it did not enable the invention. So a similar 112 first paragraph issue. The finding he made to do that was that there was no further evidence the parties could submit on the issue that could change it. And I submit that's where we are here. We've had depositions. We've had expert declarations. We've had a hearing. We have a parallel IPR. We have a Federal Circuit appeal. Well, at this point, we have an expert declaration that we're kind of questioning whether we ought to discount because it wasn't even a person skilled in the art. That doesn't mean that during a trial. Look, I have absolute sympathy. I know you've got a client who is looking at, even if you prevail here, going through an entire trial, and your hope and probably your belief is at the end of the day this case is going to go down on written description in any event. I just think it's quite a sort of exceptional ask on your part at this junction. There's no doubt it is exceptional, extraordinary relief. We did put it in a footnote. Which I'm not sure how that would, you know, we have a lot of cases that talk about what footnotes mean and what they don't. But anyway, okay, I don't want to belabor this. I apologize. I just really was taken aback a bit. Yes, Your Honor. And the Purdue Pharma case, which is discussed, I believe controls the issue, which is the forest, they disclose, is any suitable duration. The tree is 1 to 20 minutes. And they disclose no blaze marks to get you to 1 to 20 minutes. Well, the problem is it's a forest with only one tree in it. Well, they also rely on these catch-all statements, any suitable duration. And this court has repeatedly said the increased megahertz and decreased megahertz. What's the status of this case? Is it just stalled in light of this preliminary injunction or have things proceeded? It has stayed pending a parallel IPR, which we argued two weeks ago at the board of patent appeals. Oh, okay. And it's the same issue, Your Honor. On an IPR written description? Yes. Well, it's a priority claim. Oh, I see. It's technically an anticipation. But, yes, the written description comes into it. And with that, Your Honor, the district court found that the priority documents carry no hint of durations as low as 1 minute. And the appellant has done nothing to show that that's a clearly erroneous finding. And I have nothing further unless the court has questions. Thank you. It looks like I've got a minute 46. I'll be fast. With respect to the Genentech question, the party stipulated the record was closed. We don't stipulate to that, obviously. And with respect to this issue about Dr. Brunsky, certainly the case is safe. Wait, I'm sorry. I didn't understand what you said. With respect to the issue about Dr. Brunsky as to whether he's a person or nurse. No, no, no. You started by saying the party stipulated that the record is closed, but we don't stipulate? In the Genentech case. Oh, okay. Yes. That's the distinction between that case and this one. With respect to Dr. Brunsky, we obviously, if there's any question about his ability to testify from the perspective of a person of ordinary skill, even though he's not himself an orthodontist, we certainly will get an expert that will not have that problem. That is not in this record. Mr. Schultz talked about other things in the record, like depositions have been taken. There are things that are in the IPR record that are not in this record that I haven't referred to that we believe support our position, that there is written description support. I don't think it's proper for me to argue to you things not in this record, so I haven't. But certainly, there's a record to be developed. With respect to the question of blaze marks, I want to point your attention to appendix page 578 and 579, because this has been overlooked somewhat, the entire statement. The provisional application says in that paragraph, the proposed invention would be worn for approximately 20 minutes daily, but could be worn for longer or shorter periods of time, both more or less frequently, meaning not necessarily every day. It goes on to say, it represents the first time. How do we know it means that? Just parsing the sentence. The proposed invention could be worn for approximately 20 minutes daily, so there's a 20-minute duration of use and a daily frequency of use. It could be worn for longer or shorter periods of time, that refers to the 20 minutes, and both more or less frequently refers to the daily. So that's how you get that. If I can finish the sentence and I'll be out of time, the point, the next sentence says it represents the first time that a medical device requiring such modest wear duration and related orthodontic tooth movement and bone, et cetera, has been disclosed. So they're pointing to shorter rather than longer, and the rest of the discussion by Dr. Bronski explains the entirety, getting to the one to 20 minutes. Thank you. We thank both sides, and the case is submitted.